# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER M. STONE,<br><br>    Plaintiff,<br><br>    v.<br><br>STANISLAUS COUNTY SUPERIOR COURT, et al.,<br><br>    Defendants. | Case No. 1:14-cv-01639-TLN-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING ACTION FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 15)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Christopher M. Stone, proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 20, 2014. On November 19, 2014, an order issued dismissing Plaintiff's complaint, with leave to amend, for failure to state a claim. Currently before the Court is Plaintiff's amended complaint against Stanislaus County Superior Court and Stanislaus County Family Court Services, filed January 22, 2015.

**I.**

**SCREENING**

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must dismiss a case if at any time the Court determines that the complaint fails to state a claim upon which relief may be granted. In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain

1

statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678.

## II.

## AMENDED COMPLAINT ALLEGATIONS

Plaintiff brings this action against the Stanislaus Superior Court and Stanislaus County Family Court Services. Plaintiff's claims arise out of a child custody dispute in which he alleges he was denied custody and has been ordered to have supervised visits with his daughter due to the finding that she was not safe with him.

Plaintiff was maimed in an accident that resulted in a severely fractured pelvis, shattered leg, broken shoulder, broken hips, and numerous other injuries that have not fully healed. (Am. Compl. ¶ 11, ECF No. 15.) Plaintiff has been unable to work and is on public assistance. (Id.)

On April 10, 2013,[1] Plaintiff attended a mediation session where he was ordered have visitation supervised by his wife pending results of a custody evaluation. (Id. at ¶ 6.) Plaintiff received an order after April 18, 2013, stating the evaluation was to take place on April 17, 2013. (Id.) Plaintiff contends that the mediator set the date of the evaluation and the order was issued

---

[1] Although Plaintiff contends that this was a mediation session, the court order shows that a hearing was held in front of Judge Jacobson on this date at which Plaintiff was present. (Findings and Order After Hearing, attached to ECF No. 1 at 20-27.) This order reflects that the parties agreed to joint legal custody with Plaintiff's ex-wife having sole physical custody. Plaintiff was to have visitation supervised by his current wife which included alternating weekends and holidays. (Id.) The court ordered psychological examination of the parties by Dr. Moles and each party was to pay their own costs. (Id. at 25.) The child was referred to Dr. Johnson for counseling and the costs of counseling were to be shared equally amount the parties. (Id.)

2

after the evaluation was to have taken place. (Id.) Plaintiff attempted to contact the mediator to reschedule the custody evaluation, but the court has a policy of not allowing contact between a party and the mediator out of court. (Id.) The court refused to allow Plaintiff to contact the mediator and she would not talk to him when he approached her out of court. (Id.) The fact that Plaintiff did not attend the custody evaluation was later used to impeach his credibility and deny him custody. (Id.)

On April 26, 2013, Plaintiff petitioned the Court in order to choose counseling for his daughter. (Id. at ¶ 7.) His request was denied.[2] (Id.) Plaintiff did not want his daughter to go to the counselor recommended by the mediator because he was required to pay $100.00 to participate and wanted an unbiased counselor who would accept his insurance. (Id.)

On May 21, 2013, a Family Court Services Evaluator's report was submitted to the court. (Id. at ¶ 10.) The report was served on Plaintiff on May 22, 2013 and was used to deny Plaintiff custody on that day. (Id.) Plaintiff was not allowed to cross exam the mediator who created the report.[3] (Id.)

On May 28, 2013, Plaintiff filed a petition for injunctive relief which was denied by the court.[4] (Id. at ¶ 9.)

On May 29, 2013, Plaintiff filed a complaint against the mediator alleging bias and failure to follow the Rule of Court by not including the police report stating that the allegation of physical abuse was unfounded or the Child Protective Services report stating they thought it was a ploy by his ex-wife to gain custody.[5] (Id. at ¶ 8.)

Plaintiff had his wife serve a deposition subpoena on the mediator. (Id.) The mediator

---

[2] The court denied the request with the notation that the "Court has already indicated that all issues regarding the child will be heard at the review on 5-22-13 or trial on 8-13-13." (Request for Order, attached to ECF No. 1 at 29.)

[3] Plaintiff alleges that both he and his ex-wife were ordered to undergo a psychological examination and his wife has not been required to while he is being denied visitation due to his failure to comply. However, the May 21, 2013 mediator's report reflects that the child's mother has complied with the order and did undergo a psychological examination. (Family Court Services Evaluator's Report, attached to ECF No. 1 at 40.)

[4] The denial of this request states "Court has no authority to order a private therapist to allow audio or video recording. Ms. Freitas has no further meetings set w/parties." (Request for Order, attached to ECF No. 1 at 33.)

[5] The court denied the request with the notation the "Court has already ruled that no further hearings will be set on custody/visitation before the long cause hearing." (Request for Order, attached to ECF No. 1 at 31.)

would not appear for a deposition without payment of $1,200.00, yet she appeared and testified at trial. (Id.) After being served with the subpoena for the deposition, the mediator changed the recommendation that Plaintiff's wife supervise visits with his daughter and recommended that visits be supervised by Sierra Vista. (Id.) Plaintiff contends this was in retaliation for his wife serving the mediator with the subpoena. (Id.)

On August 13 through 14, 2014, during a two day trial, Plaintiff was not allowed to call a witness to rebut the allegation that he had accused someone of having paid a Stanislaus Superior Court Judge $150,000.00 to deny Plaintiff custody. (Id. at ¶ 3.) The judge used this allegation to determine that Plaintiff had mental issues making it unsafe for him to care for his daughter. (Id.) The judge assumed that Plaintiff suffered from clinical depression based upon the trial testimony of Sandra Centeno that he suffers from clinical depression. (Id.) The judge also used this information to determine that mental health evaluation was necessary and Plaintiff's daughter may not be safe with him.[6] (Id.) Plaintiff was not provided with a court reporter during his trial despite his request. (Id. at ¶ 4.)

During the trial, the mediator testified that his daughter's therapist recommended that he should have supervised visits because his daughter was afraid of him. (Id. at ¶ 9.) When Plaintiff's objection was sustained on the basis of hearsay, the mediator testified that his

---

[6] Plaintiff alleges that Ms. Centrano sent a letter clarifying that she erroneously testified, that the allegations were a ploy from his ex-wife to gain custody, and that she had not testified that he suffered from clinical depression. (ECF No. 15 at ¶ 3.) The letter from Ms. Centrano to Judge Jacobson states:

> This letter is written at the request of Christopher Stone. On 08/13/13, I served as an expert witness for Mr. Stone's case. It had been my understanding that Mr. Stone's daughter, Julianna Stone, was having supervised visits with Mr. Stone after Child Protective Services had become involved due to physical abuse inflicted by him. On 09/10/13, Mr. Stone came in for a counseling session where he brought a copy of a police report that stated that allegations of physical abuse were unfounded by Stanislaus County social worker, Chris Lopez. Mr. Stone clarified that he had supervised visits due to the recommendation from a mediator, Deborah Johnson.
>
> I have diagnosed Mr. Stone with (309.28) adjustment disorder with mixed anxiety and depressed mood. According to the DSM-IV-TR, an adjustment disorder is the development of emotional or behavioral symptoms in response to an identifiable stressor(s). Once the stressor (or its consequences[)] has terminated, the symptoms do not persist for more than an additional 6 months. This is different from (296.2x) Major Depressive Disorder where symptoms can persist and/or worsen over time. In Mr. Stone's case, his symptoms have improved since first initiating counseling treatment.

(Letter from Sandra Centeno to Judge Jacobson dated September 16, 2013, attached as Exhibit C to ECF No. 1.)

daughter told the mediator that she was afraid of Plaintiff.  (Id.)  In the evaluator's report, the mediator specifically stated that the child did not talk about her father or the relationship with her father.[7]  (Id.)

Plaintiff confronted the therapist about the handling of his daughter's case and filed a complaint against the psychologist with the Board of Psychology.  (Id. at ¶ 9.)  After subpoenaing the therapist's notes, Plaintiff contends they show that his daughter had discussed many things about the mother's environment that had been disregarded; his daughter told the therapist that she wanted to live with him; and that Plaintiff was like a mother to her.  (Id.)

Plaintiff has been ordered that he cannot petition the court to restore his custody rights and unsupervised visitation until he undergoes a complete mental examination.  (Id. at ¶ 5.)  Plaintiff told the mediator at the time the mental evaluation was ordered that he could not afford the $1,500.00 to which the mediator replied, "everyone says they don't have money."  (Id.)  Plaintiff has offered to appear for a mental examination, but the psychologist refuses to schedule the examination without payment of the $1,500.00 in advance.  (Id.)  At trial, the court found that Plaintiff was able to pay the $1,500.00 because he could borrow it from his mother.  (Id.)  Plaintiff does not feel that his mother should have to be liable or responsible for the cost of the mental examination.  (Id.)

On September 5, 2013, the Court changed an order without a hearing.  (Id. at ¶ 13.)  On that date there was a hearing on grandparent visitation that was continued due to the judge not being available.  (Id.)  Plaintiff contends that there was ex-parte communication between the attorneys and court-appointed mediator who requested the order to be changed.  (Id.)  Plaintiff alleges that it is the practice when a hearing has been vacated prior to the hearing.  (Id.)  Plaintiff contends that the mediation department regularly allows ex-party communications between

---

[7] The mediator's report states:

> The father did not attend the appointment when Julianna was interviewed.  I interviewed Julianna alone.  She responded appropriately for her age, but did not answer questions regarding activities in her father's home or her relationship with him.  She freely and spontaneously spoke about her mother, step-father, little sister, school, school friends, teacher, drew pictures and was openly expressive except for comments about her father.

(Family Court Mediator's Report, attached to ECF No. 1 at 39-40.)

5

1  attorneys, the court or mediator, but denies self-represented parties the opportunity to talk to
2  mediators out of court. (Id.)

3        On November 21, 2013, the clerk of the court refused to file a declaration by Rosemary
4  Davis-Brockus who had witnessed events that were used to deny Plaintiff custody. (Id. at ¶ 2.)
5  Plaintiff alleges that since the clerk refused to file the document it was not available to be
6  included in documents used to decide his appeal. (Id.)

7        On December 5, 2013, the court denied Plaintiff's petition for sanctions against the
8  mediator because it is the custom of the court not to sanction mediators.[8] (Id. at ¶ 12.) Plaintiff
9  alleges that it is the custom of the court not to allow a party to hold a person who is very
10 involved and exercising great power in the proceedings to be held accountable. (Id. at ¶ 13.)

11       A note that is blatantly false, prejudicial, and was not filed or served on any party was
12 displayed in his case file for the judge to see. The note reads, "6/5/14 FATHER HAS MINOR
13 TOOK FROM A PARK IN ANGELS CAMP. FATHER SUPPOSEDLY LIVES IN
14 TURLOCK." (Am. Compl. ¶ 1, ECF No. 15.)

15       Plaintiff contends that the Stanislaus Superior Court violated 18 U.S.C. § 1346 and
16 engaged in a scheme or artifice to defraud him honest services. (Id. at ¶ 14.) Plaintiff seeks
17 monetary damages, equitable relief vacating the judgment entered on August 26, 2013 and
18 amended on September 12, 2013 due to the fact that Plaintiff was not afforded a fair trial on
19 August 13-14, 2013; an order requiring the court assign his action to another judge and replace
20 the court appointed mediator, and expungement of any records that are not filed but are attached
21 to his state court case file. (Id. at pp. 10-11.)

22         **III.**
23         **DISCUSSION**
24     **A.**     **Section 1983**
25      "The Eleventh Amendment bars suits for money damages in federal court against a state

---

[8] The court denied Plaintiffs motion for sanctions stating "Sanctions are governed by Cal. Rules of Court, Rule 5.14. Ms. Freitas in her role as the child custody recommending counselor is not one of the persons who may be subject to sanctions. Any complaints against the counselor [are] to be directed to the Director of Family Court Services, Sandy Lucas, per Local Family Court Rules." (Family Law Correction Sheet, attached to ECF No. 1 at 45.)

1  [and] its agencies . . ." <u>Aholelei v. Dept. of Public Safety</u>, 488 F.3d 1144, 1147 (9th Cir. 2007),
2  "regardless of the relief sought, unless the state unequivocally consents to a waiver of its
3  immunity," <u>Yakama Indian Nation v. State of Washington</u>, 176 F.3d 1241, 1245 (9th Cir. 1999);
4  <u>see</u> <u>also</u> <u>Seminole Tribe of Fla. v. Florida</u>, 116 S. Ct. 1114, 1122 (1996).  The Ninth Circuit has
5  recognized that "[t]he State of California has not waived its Eleventh Amendment immunity with
6  respect to claims brought under § 1983 in federal court, and the Supreme Court has held that §
7  1983 was not intended to abrogate a State's Eleventh Amendment immunity."  <u>Brown v.
8  California Dep't of Corrections</u>, 554 F.3d 747, 752 (9th Cir. 2009).  The Superior Court and
9  Family Court Services (as a department within the court system) are agencies of the state and as
10 such are entitled to Eleventh Amendment immunity.  <u>See</u> <u>Greater Los Angeles Council on
11 Deafness, Inc. v. Zolin</u>, 812 F.2d 1103, 1110 (9th Cir. 1987) (A suit against the Superior Court is
12 a suit against the state and are barred by the Eleventh Amendment); <u>Franceschi v. Schwartz</u>, 57
13 F.3d 828, 831 (9th Cir 1995) (municipal court is an arm of the state and entitled to Eleventh
14 Amendment immunity); <u>Simmons v. Sacramento County Superior Court</u>, 218 F.3d 1156 (9th
15 Cir. 2003) (suits against a county superior court or its employees are barred by the Eleventh
16 Amendment.).

17     Plaintiff was previously advised in the November 19, 2014 order that he may not bring a
18 claim under section 1983 against Stanislaus County Superior Court and Stanislaus County
19 Family Court Services in this action.  Plaintiff was provided with the legal standards that the
20 Court believed would apply to his claims.  Plaintiff's first amended complaint makes the same
21 allegations as the original complaint, with the addition of paragraph 14 and additionally requests
22 equitable relief.

23     Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or
24 other federal rights by persons acting under color of state law.  <u>Nurre v. Whitehead</u>, 580 F.3d
25 1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006);
26 <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).  Under section 1983, government officials
27 may not be held liable for the actions of their subordinates under a theory of <u>respondeat</u> <u>superior</u>.
28 <u>Iqbal</u>, 550 U.S. at 677.  To state a claim under section 1983, Plaintiff must demonstrate that each

defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff was informed that to state a claim for relief under section 1983, he was required to link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Plaintiff's complaint only brings claims against the Stanislaus County Superior Court and Stanislaus County Family Court Services, for this reason, Plaintiff fails to state a claim under section 1983.

**B.    Jurisdiction Over Plaintiff's Claims**

While it is not clear from Plaintiff's complaint if the trial conducted on August 13 through 14, 2014 was the final disposition of Plaintiff's case; Plaintiff's claims are also barred by either Younger abstention or the Rooker-Feldman doctrine.

1.    Younger Abstention

If Plaintiff's state court action is ongoing then Younger abstention would apply. In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that under principles of comity and federalism, a federal court should not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief except under special circumstances. Id. at 43-54. Younger abstention is required when: (1) state proceedings, judicial in nature, are pending; (2) the state proceedings involve important state interests; and (3) the state proceedings afford adequate opportunity to raise the constitutional issue. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Dubinka v. Judges of the Superior Court, 23 F.3d 218, 223 (9th Cir. 1994). The rationale of Younger applies throughout the appellate proceedings, requiring that state appellate review of a state court judgment be exhausted before federal court intervention is permitted. Dubinka, 23 F.3d at 223. Although Younger dealt with a state court criminal prosecution, the doctrine is fully applicable to state court civil proceedings such as child custody cases. Moore v. Sims, 442 U.S. 415, 423 (1979).

The Supreme Court has held that federal courts can abstain in cases that present a federal constitutional issue, but which can be mooted or altered by a state court determination. Colorado

1 River Water Conservation Dist. v. United States, 424 U.S. 800, 813-14 (1976); County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-17 (1996). In determining whether it should abstain, a federal court should consider problems which can occur when two courts assume jurisdiction over the same claim - the inconvenience of the federal forum, the avoidance of piecemeal litigation, and the order in which the parties filed the state and federal proceedings. Colorado River, 424 at 818-19.

In this instance, Plaintiff is involved in an ongoing custody proceeding in the State family court system. The state court has been adjudicating this action and has instituted orders which Plaintiff is required to comply with in order to regain unsupervised visits with his daughter. If this Court were to grant the relief requested, vacating the State court's orders, this Court would substantially interfere in the State's proceedings.

Familial relations are a traditional area of state concern. Moore, 442 U.S. at 435. The State has an important interest in ensuring that the best interest of the minor child and the constitutional rights of the parent are protected. Additionally, "a state has a vital interest in protecting 'the authority of the judicial system, so that its orders and judgments are not rendered nugatory.'" H.C. ex rel. Gordon v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000) (quoting Juidice v. Vail, 430 U.S. 327, 336 n.12 (1977)). Finally, Plaintiff has not shown that the state court proceeding is an ineffective forum for her to adjudicate his federal rights. Plaintiff has an adequate forum to appeal the decision of the family court through the state appellate court. The Court finds that under Younger this court would be required to abstain from interfering in the state court proceedings.

2. Rooker-Feldman Doctrine

If the order issued in trial was the final decision of the case, the Rooker-Feldman doctrine would apply. The United States Supreme Court is the only federal court which has jurisdiction to hear a direct appeal from the final judgment of a state court. Noel v. Hall, 341 F.3d 1148, 1154 (9th Cir. 2003). A party who is dissatisfied with the decision of a state court may seek reversal by appealing to a higher state court. Id. at 1155. If the party is dissatisfied with the

decision of the highest state court, then he may seek reversal by appealing to the United States Supreme Court. Id.

The Rooker-Feldman doctrine provides that the losing party in a state court action cannot bring "a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seek[] to vacate or set aside the judgment of that court" as this is a forbidden de facto appeal. Noel, 341 F.3d at 1156. The federal court must refuse to hear the de facto appeal and also must refuse to decide any issue that is "inextricably intertwined" with the issue resolved by the state court decision. Id. at 1158. "Simply stated, the Rooker–Feldman doctrine bars suits 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2010) (quoting Exxon Mobil Corp. v. Saudi Basic Indust. Corp., 544 U.S. 280, 284 (2005)).

The Rooker-Feldman doctrine applies here because Plaintiff is alleging that his rights were violated by errors made by the state court that deprived him of a fair trial. Plaintiff contends that his due process rights were violated by actions taken by his court appointed mediator and the judge in adjudicating his child custody dispute. Plaintiff alleges that the state court required him to pay for a mental examination when he could not afford it, denied his motions for relief, changed the order that his wife could supervise visits with his daughter, refused to provide a court reporter at trial, erroneously construed the testimony of an expert witness, found that his daughter was not safe with him, and did not file declarations after the trial refuting the testimony presented at trial. Plaintiff received a two day trial after which the state court found that a mental health evaluation was necessary and Plaintiff's daughter may not be safe with him. Plaintiff has been ordered to undergo a psychological examination and complete parenting class before he can petition the court for an order lifting the supervision requirement. Plaintiff is seeking relief from the state court judgment by having the federal court vacate the prior decisions. When a party brings an action in federal court that challenges a child custody decision made by the state court the claim is barred by the Rooker-Feldman doctrine. See Phifer v. City of New York, 289 F.3d 49, 57 (2d Cir. 2002) (no question suit challenging family court's

1 decisions regarding custody, neglect, and visitation were barred by <u>Rooker-Feldman</u> doctrine).

2 In this action, Plaintiff is asserting a legal injury by the state court and is seeking a relief from the state court judgment as a remedy, therefore this is a de facto appeal of the state court ruling. <u>Kougasian v. TMSL, Inc.</u>, 359 F.3d 1136, 1140 (9th Cir. 2004). This court does not have jurisdiction over this de facto appeal, and the Court recommends that Plaintiff's claims be dismissed.

### C. 18 U.S.C. § 1346

Finally, in his amended complaint Plaintiff includes the allegation that Defendants deprived him of honest services in violation of 18 U.S.C. § 1346. Section 1346 is the criminal definition of a scheme or artifice to defraud. <u>See</u> 18 U.S.C. § 1341 et seq. Only the federal government can prosecute violations of a federal criminal statute. <u>Lasko v. American Bd. of Surgery</u>, __ F.Supp.3d ___, 2014 WL 4699622, *7 (D. Nev. September 19, 2014).

Plaintiff cannot recover civil damages for a violation of a civil statute unless the statute provides for a private right of action. <u>Hayes v. Shelby County Trustee</u>, 971 F.Supp.2d 7171, 735 (W.D. Tenn. 2013). A private right of action under a criminal statute has rarely been implied. <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 316 (1979). Where a private right of action has been implied, "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." <u>Chrysler Corp.</u>, 441 U.S. at 316 (quoting <u>Cort v. Ash</u>, 422 U.S. 66, 79 (1975)).

Section 1346 states "[f]or the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services." Since this is merely a definition of a scheme or artifice to defraud it does not provide a cause of action.

Further, the violations identified by 18 U.S.C. § 1341 et seq. provide only for fines and imprisonment for violations of the chapter. <u>See</u> 18 U.S.C. § 1341 (Frauds and swindles punishable by fines and imprisonment of up to 20 to 30 years); 18 U.S.C. § 1343 (Fraud by wire, radio, or television, same); 18 U.S.C. § 1342 (Fictitious name or address punishable by fines and imprisonment of not more than five years); 18 U.S.C. § 1344 (Bank fraud punishable by fines

11

and imprisonment of up to 30 years); 18 U.S.C. § 1347 (Health care fraud punishable by fines and imprisonment of up to 10 to 20 years or life); 18 U.S.C. § 1348 (Securities and commodities fraud punishable by fines and imprisonment of up to 25 years). Further, the statute specifically provides that the Attorney General may commence an action to enjoin specified offenses. 18 U.S.C. § 1345. The penalties for offenses associated with 18 U.S.C. § 1341 et seq. and the Legislatures specific provision authorizing the Attorney General to commence action to enjoin conduct do not provide a statutory basis to infer that a civil cause of action lies for violations. Plaintiff cannot state a claim for damages in this action for violations of the criminal fraud statutes.

## IV.

## CONCLUSION AND ORDER

For the reasons stated, Plaintiff has failed to state a claim for a violation of his constitutional rights under section 1983. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires,'" Fed. R. Civ. P. 15(a), and "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect," Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted). However, the Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Noll v. Carlson, 809 F. 2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed based on Plaintiff's failure to state a claim upon which relief may be granted under section 1983

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may

result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 30, 2015**

UNITED STATES MAGISTRATE JUDGE

13